**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

|                                              |   |                                         |
|----------------------------------------------|---|-----------------------------------------|
|                                              | : |                                         |
| DISABLED PATRIOTS OF                         | : |                                         |
| AMERICA, INC. and BONNIE KRAMER,             | : |                                         |
|                                              | : | Civil Action No.: 07-CV-3165(FLW)       |
| Plaintiffs,                                  | : |                                         |
|                                              | : | **OPINION**                             |
| v.                                           | : |                                         |
|                                              | : |                                         |
| CITY OF TRENTON, NEW JERSEY,                 | : |                                         |
|                                              | : |                                         |
| Defendant.                                   | : |                                         |
|                                              | : |                                         |

_____

**WOLFSON**, **United States District Judge**:

Presently before the Court is a motion filed by Defendant, City of Trenton, New Jersey ("Defendant"), to dismiss all claims of plaintiffs Bonnie Kramer and Disabled Patriots of America, Inc. (collectively "Plaintiffs") pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs lack standing. Plaintiffs filed suit under Title III of the Americans with Disabilities Act, 42 U.S.C. § 22101 ("ADA"), alleging that Defendant's public accommodations fail to comply with ADA standards. The Court has considered the parties' moving, opposition and reply papers. For the reasons that follow, the Court denies Defendant's Motion to Dismiss for failure to state a claim, without prejudice. Plaintiffs shall have 10 days from the date of the Order to file an amended complaint and submit an affidavit, regarding Kramer's individual standing, consistent with this Opinion. Defendant may seek discovery limited to the information set forth in Kramer's affidavit or re-file its motion within 30 days of Plaintiffs filing the foregoing pleadings.

## I.  Procedural History and Background

Since Defendant moves to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. 12(b)(6), the following version of events assumes Plaintiffs' allegations to be true.

Plaintiff Bonnie Kramer ("Kramer") "uses a wheelchair for mobility purposes" and is "disabled" as defined by the ADA.  Amended Complaint ("Complaint") ¶ 2.  She is an Ohio resident who "is substantially limited in performing one or more major life activities, including but not limited to walking, standing, grabbing, grasping and pinching." Id.  Plaintiff Disabled Patriots of America, Inc. ("Disabled Patriots") is a non-profit corporation that seeks to ensure that disabled individuals have full access to and use of places of public accommodation.  Id. ¶ 3. The organization represents the interests of its members and other persons with disabilities, including Kramer.  Id.

Kramer claims to have a "personal desire to have access to the place[s] of public accommodation free of illegal barriers to access" identified in the Complaint.  Id. ¶ 4.  She also acts as a "tester" for the "purpose of discovering, encountering, and engaging discrimination against the disabled in public places."  Id.  As a "tester," Kramer employs a routine practice, where she personally visits the public accommodation and tests the barriers to access to determine whether and to what extent they are illegal.  Id.  Kramer then proceeds with legal action to enjoin such discrimination and subsequently returns to the tested premises to verify compliance or non-compliance with removal of illegal barriers to access.  Id.

Kramer allegedly visited public places in Trenton, New Jersey, as both a visitor and a "tester."  Id.  Specifically, she visited Cadwalader Park, Ike Williams Recreational Center, North Clinton Community Center, Robert Clemente Pool, Sonny Vereen Memorial Park, Trenton City

2

Hall, Trenton Police Department, and Trenton Public Library, collectively referred to as the "Facility" of which Defendant, City of Trenton, New Jersey, is the owner, lessor, lessee, and/or operator.  Id. ¶ 5.  Kramer encountered barriers to access at the Facility, she engaged and tested these barriers, and discovered illegal barriers to access at these public accommodations.  Id. ¶ 4.  Kramer asserts that ramps, access aisles, urinals, mirrors, exposed pipes, "grab-bars in the toilet room stalls" at these locations fail to comply with ADA standards.  Id. ¶ 11.  "Independent of other subsequent visits," Kramer "intends to visit the premises annually" to monitor ADA compliance and maintenance of the accessibility features.  Id. ¶ 4.  Plaintiffs seek a permanent injunction to compel Defendant to remove all alleged physical barriers to access and comply with ADA requirements.  Id. ¶¶ 2, 13.  Plaintiffs also request an award for damages and attorneys fees, costs, and litigation expenses incurred in this action.  Id. ¶ 16.

**II.  Standard of Review**

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal citation and quotations omitted).  Recently, in Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007), the Supreme Court clarified the 12(b)(6) standard.  Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Twombly, 127 S.Ct. at 1968 (quoting

<u>Conley</u>, 355 U.S. at 45-46).  Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level."  <u>Id.</u> at 1965.  The Third Circuit has summed up the Supreme Court's <u>Twombly</u> formulation of the pleading standard as: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  <u>Phillips</u>, 515 F.3d at 234 (quoting <u>Twombly</u>, 127 S.Ct. at 1965).

**III.  Discussion**

Title III of the ADA prohibits discrimination against disabled individuals in places of public accommodation.  42 U.S.C. § 12182(a).  Discrimination includes "a failure to remove architectural barriers . . . that are structural in nature, in existing facilities. . . ."  42 U.S.C. § 12182(b)(2)(A)(iv).  The ADA provides a private cause of action for injunctive relief to "any person who is being subject to discrimination on the basis of disability."  42 U.S.C. § 12188(a)(1).

Defendant argues that Plaintiffs lack standing to bring an ADA claim.  In order to set forth a viable claim in federal court, a plaintiff is required to satisfy both the Article III constitutional minimum of a "case or controversy" and any prudential considerations set by the courts.  <u>See</u> <u>Clark v. Burger King Corp.</u>, 255 F. Supp. 2d 334, 341 (D.N.J. 2003).  To satisfy Article III standing, a plaintiff must demonstrate he/she has (1) suffered an injury in fact that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a

causal connection between the injury and the conduct complained of, that the injury has to be

fairly traceable to the defendant's challenged action; and (3) it must be likely as opposed to

merely speculative, that the injury will be redressed by a favorable decision.  See Lujan v.

Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted).

        In addition to the Article III "case or controversy" requirement, prudential limitations

stand as judicially imposed limitations on a court's power to hear and decide a case.  See Warth

v. Seldin, 422 U.S. 490, 498 (1975).  In Warth, the Supreme Court elaborated on the prudential

standing considerations that must be satisfied in addition to the constitutional minimum.  Id.

Prudential considerations include a prohibition on a plaintiff's ability to bring a "generalized

grievance" that is shared equally with a large class of citizens and that a plaintiff must assert his

own legal rights and interests and not rely on the claims of others.  Id. at 499-500.  Plaintiffs, as

the party invoking federal jurisdiction, bear the burden of establishing the elements of standing.[1]

Standing is "not mere [a] pleading requirements but rather an indispensable part of the plaintiff's

case, each element must be supported in the same way as any other matter on which the plaintiff

bears the burden of proof."  Lujan, 504 U.S. at 561.

---

[1]Plaintiffs incorrectly state that they have met the threshold requirements for standing through a simple reading of the Amended Complaint.  Opposition to Motion to Dismiss and Incorporated Memorandum of Law ("Opp.") at 3-4.  While Plaintiffs correctly indicate the threshold standing requirements and the "intent to return" test, Plaintiffs state "at this stage of the proceedings, City of Trenton has more worries about Plaintiffs' burden of proof than denying the existence of the unlawful barriers."  Id. at 8.  Plaintiffs, however, have not meet their burden of establishing the elements of standing in this case, simply by the language of the Complaint.

### 1.        Plaintiff Kramer Fails to Plead Sufficient Individual Standing

To meet the Article III standing requirements, Kramer must first show that she suffered
an "injury in fact" that is concrete and imminent.  Lujan, 504 U.S. at 560.  In determining
whether a future injury is "concrete and particularized" for the purposes of an ADA claim, courts
have considered the likelihood of the plaintiff returning to the defendant's place of public
accommodation.  See Access 4 All, Inc. v. 539 Absecon Blvd., No. 05-5624, 2006 WL 1804578,
at *3  (D.N.J. June 26, 2006).

A plaintiff cannot merely allege an intention to "some day" return to the defendant's
place of public accommodation.  Lujan, 504 U.S. at 564.  Generally, courts look to the following
factors to determine if a plaintiff is likely to return, including: (1) the plaintiff's proximity to the
defendant's place of public accommodation; (2) the plaintiff's past patronage of the defendant's
place of public accommodation; (3) the definitiveness of the plaintiff's plan to return; and (4) the
plaintiff's frequency of travel near the defendant.  See 539 Absecon Blvd., 2006 WL 1804578 at
*3.  In the instant matter, Defendant alleges that Plaintiffs fail to plead sufficient facts to
demonstrate the likelihood of future injury necessary to establish the injury in fact required for
standing.  Defendant's Brief in Support of Motion to Dismiss ("Def. Br.") at 7-8.  Defendant
states that Kramer lacks proximity to the public accommodations at issue, lacks past patronage to
the Facility, lacks definite plans to return to the Facility, and fails to establish frequency of travel
near Trenton, New Jersey.  Kramer has alleged that she intends to return annually to the Facility
to test compliance, "independent of other subsequent visits."  Compl. ¶ 4.  Kramer, however,
fails to expand on this vague assertion to return to the Facility as a patron or visitor beyond her

tester status.[2]  Kramer merely states that she has a "personal desire to have access to the place of public accommodation free of illegal barriers to access."  Id.  Rather than dismiss at this juncture, based upon Kramer's general assertion of an intent to return to the Facility, the Court elects to provide Plaintiffs with an opportunity to sufficiently plead Kramer's likelihood of future injury through an amended complaint and accompanying affidavit, clarifying her vague "intent to return."  In this connection, the Court notes the issues that will need to be addressed by Plaintiffs to establish standing.

First, the Court must consider Kramer's proximity to Defendant's place of public accommodation to determine if she is likely to return.  In Molski v. Kahn Winery, 405 F. Supp. 2d 1160, 1163-64 (C.D.Cal. 2005), the court determined that, "as the distance between a plaintiff's residence and a public accommodation increases, the potential for the occurrence of future harms decreases."  Generally, "[c]ourts have consistently maintained that a distance of over 100 miles weighs against finding a reasonable likelihood of future harm."  Jones v. Sears, Roebuck & Co., No. 05-0535, 2006 WL 3437905, at *3 (E.D.Cal. Nov. 29, 2006); compare Delil v. El Torito Restaurants, Inc., No. 94-3900, 1997 WL 714866, at *4 (N.D.Cal. June 24, 1997) (holding that a plaintiff lacked standing because she failed to show likelihood of future harm, where she lived more than a hundred miles from the public accommodation at issue, and had not,

---

[2]Whether a plaintiff may satisfy the intent to return requirement if she visits the establishment solely as a tester has not previously been addressed by courts in this Circuit.  See, e.g., Clark v. McDonald's Corp., 213 F.R.D. 198, 227-28 (D.N.J. 2003) (declining to reach the issue of "tester" standing where there was no reason to believe that plaintiff's sole motivation in visiting the restaurants was to test for ADA compliance).  Standing based on tester status alone is not being addressed here because if Kramer has individual standing, ruling on tester standing is not necessary.  On the other hand, if Kramer cannot adequately allege individual standing through an amended pleading and affidavit, then the Court will consider the claim of standing based on tester status, alone.

in the four years since the incident of discrimination, attempted to visit it), with Hubbard v. Rite
Aid Corp., No. 02-2497, 2006 WL 1359630, at *9 (S.D.Cal. May 4, 2006) (holding that the
plaintiff, who lived 20 miles away from the defendant's shopping center, had shopped there on
previous occasions, and intended to shop there in the future, had standing to purse a claim under
the ADA).

　　　　Neither party disputes that Kramer is an Ohio resident.  As Defendant correctly states,
although Kramer did not identify the distance between her Ohio residence and Trenton, New
Jersey, it certainly exceeds 100 miles.  Def. Br. at 10.  Plaintiffs argue that proximity should not
be a determining factor in this case because courts have found that in certain situations the
plaintiff's proximity neither impairs nor advances his or her argument regarding standing.  Opp.
at 8.   Indeed, this Court has held that "plaintiff's proximity to defendant's place of public
accommodation[] is less determinative in the context of hotels than in restaurants and other retail
establishments."  539 Absecon Blvd., 2006 WL 1804578 at *3 (finding that the considerable
distance between the plaintiff's Florida residence and a hotel in New Jersey did not foreclose his
claim for lack of standing).  The instant case differs from 539 Absecon Blvd., however, because
the Defendant's facilities are not hotels nor do they cater specifically to travelers.  In fact,
Plaintiffs complain of facilities that are quite distinct from a hotel, restaurant, or bus transit
system that a plaintiff would likely frequent again.  Rather, Kramer complains of urinals, mirrors,
exposed pipes, and "grab-bars in the toilet room stalls" failing to comply with ADA standards at
Trenton City Hall, the Trenton Police Department, and the Trenton Public Library, to name a
few.  Compl. ¶ 11.  Because Kramer lives more than 100 miles from the public accommodations
at issue, the "reasonable likelihood" of future harm to Kramer is decreased.  Unlike hotels and

restaurants, these local community services and places of public accommodation do not attract

tourists.  Further, Kramer has not alleged a reason to return or likelihood of return and thus future

injury (apart from, in her capacity to test).  Therefore, it is even less likely that Kramer would

return to a local community center, police department or public library in her personal capacity.

Thus, Kramer's lack of proximity to Defendant's Facility militates against Kramer's likelihood

of return.

The second factor requires Kramer to show past patronage of Defendant's place of public

accommodation to support her likelihood of return and future harm.  The ADA does not require

an individual asserting a claim to participate in a "futile gesture" if she has actual knowledge of a

defendant's failure to comply with ADA provisions.  42 U.S.C. § 12188(a)(1).  It is sufficient for

a plaintiff to allege that he has actual knowledge of architectural barriers and that but for

noncompliance with ADA provisions, he would avail himself of the defendant's goods and

services.  See, e.g., Clark v. McDonald's Corp., 213 F.R.D. 198, 229 (D.N.J. 2003) (finding that

the plaintiff was deterred from patronizing defendant's restaurant due to known violations of the

ADA and that such deterrence was sufficient to constitute an "actual injury"); see also Pickern v.

Holiday Quality Foods Inc., 293 F.3d 1133, 1137-38 (9th Cir. 2002) (finding that plaintiff's

allegation that he had visited defendant's store and would shop there if it was accessible to the

disabled was sufficient to establish an actual injury for the purposes of standing); Kratzer v.

Gamma Management Group, Inc., No. 04-6031, 2005 WL 2644996, at *3 (E.D.Pa. Oct. 12,

2005) (finding that plaintiffs' visit and alleged intent to return to defendant's hotel stated a claim

of an actual injury under the ADA).  In the instant matter, Kramer alleges that she, in her

"individual capacity," visited the Facility and that she encountered architectural barriers that fail

9

to comply with the ADA standards; on a motion to dismiss, that allegation is accepted as true. Compl. ¶¶ 4, 11.

A plaintiff can establish a likelihood of future injury based on his or her previous visits to defendant's facility and a present desire to return to the location.  See Burger King, 255 F. Supp. 2d at 434 (finding the plaintiff's past patronage at certain Burger King restaurants, within a reasonable distance of plaintiff's residence, supported a reasonable likelihood of future injury at these locations).  However, where a plaintiff visits a public accommodation "only once, the lack of a history of past patronage seems to negate the possibility of future injury at [that] particular location." Kahn, 405 F. Supp. 2d at 1164 (internal citation and quotations omitted).  A presumption against future injury applies unless Kramer can show a connection to the establishment.  See Id.  She has not.  Unlike the facts in Clark, the Facility is not a chain restaurant and Defendant's closest public accommodation is located more than 100 miles from Kramer's home.  The Facility is comprised of purely local establishments, catering to the needs of local residents, i.e., police station, public library, city hall.  In the instant case, Kramer alleges that she visited the Defendant's public of public accommodation, tested all barriers to access, and then proceeded with legal action.  Compl. ¶ 4.  Thus, Kramer visited the public accommodation at least one time, but has not indicated it was for any other purpose than to "test" the Facility. This Court will afford Plaintiffs an opportunity to clarify Kramer's reasons for returning to the Facility, including any connection or preference for access to these Trenton community centers and services, or any connection to the city, such as family ties or business relations, to demonstrate her likelihood of future injury.

The third factor requires Kramer to show definite plans to return to Defendant's places of accommodation.  See Access 4 All Inc. v. Wintergreen Commercial P'ship, Ltd., No. 05-1307, 2005 WL 2989307, at *3 (N.D.Tex. Nov. 7, 2005).  In Access 4 All v. Oak Spring, Inc., No. 04-75, 2005 WL 1212663, at *5 (M.D.Fla. May 20, 2005), the district court held that "mere expressed desire does not by itself imply an intent to return."  However, it is sufficient to establish a likelihood that he or she does have such a desire.  539 Absecon Blvd., 2006 WL 1804578 at *3.  To establish standing, the plaintiff must put forth a definitive, uncontested intent to return before filing the complaint to establish standing.  Wintergreen, 2005 WL 2989307 at *3. In Wintergreen, the plaintiff, a Florida resident, traveled to Dallas, Texas and stayed at the defendant's property.  See Id. at *4.  There, the plaintiff "encountered architectural barriers that allegedly endangered his safety."  Id.  In his complaint, the plaintiff alleged "plans to return to the property to avail himself of the goods and services offered to the public at the property."  Id.  Yet, the Wintergreen court found that the plaintiff lacked standing in part because he failed to show definitive plans to return at the time that the complaint was filed.  Id.  In addition, in Oak Spring, Inc., the court found that a plaintiff only established a speculative injury where he alleged a general intent return to the defendant's hotel and no continuing connection to the area where the defendant's public accommodation was located.  2005 WL 1212663 at *5.

Similar to Wintergreen and Oak Spring, Inc., Kramer alleges a general intent to visit Defendant's places of public accommodation, but does not allege any continuing connection to Trenton or New Jersey other than her visit to test the facilities listed in the Complaint.  Kramer states that "independent of other subsequent visits, [she] also intends to visit the premises annually to verify its compliance or non-compliance with the ADA . . ."  Compl. ¶ 4.  Kramer has

not offered any familial ties to or business relations in New Jersey, that she has any history of visiting the Facility, or any personal reason to return to the Facility.

The last factor the court must address is Kramer's frequency of travel near Defendant's places of accommodation.  Id.  Again, Kramer does not allege any pre-existing business or familial association in the area.  Nor does Kramer assert an interest in returning to Trenton other than to inspect the facilities for ADA violations annually.  Cf. Wilson v. Costco Wholesale Corp., 426 F. Supp. 2d 1115, 1122 (S.D.Cal. 2006) (finding that the plaintiff, who only intended to travel to San Diego at least three or four times a year, could not establish standing).  Similarly, Kramer has provided no information regarding her frequency of travel near Defendant's places of accommodation.  Because Plaintiffs are vague in their assertion of Kramer's likelihood of future harm, the Court is giving Plaintiffs leave to file an amended complaint and submit an affidavit, clarifying Kramer's "intent to return," consistent with this Opinion.  In that regard, Kramer should delineate why she would return to the particular sites identified, including why she would visit such places as the Trenton Public Library, City Hall, Police Department, parks and community centers.

Finally, in order to satisfy Article III standing, plaintiff must show a causal connection between defendant's actions and the harm she has suffered and that such harm is legally redressable.  Lujan, 504 U.S. at 560.  Defendant does not contest either of these two prongs of Kramer's Article III standing in her personal capacity.  Indeed, it is clear from Plaintiffs' complaint that Kramer encountered specific architectural barriers when she visited the Defendant's Facility.  Because Kramer is disabled and requires the use of a wheelchair, she was unable to use numerous services and amenities at the Facility due to the alleged ADA violations.

Compl. ¶¶ 4, 11.  Moreover, Plaintiffs ask this Court to grant injunctive relief to enjoin

Defendant from maintaining architectural barriers that allegedly prevent Kramer and others

similarly situated from patronizing the Facility.  Clearly, injunctive relief would address such

harm.


    **2.  Plaintiff Disabled Patriots of America, Inc. Lacks Associational Standing Unless Kramer Can Establish Her Standing**

    Even where an association lacks standing to sue in its own right because it has not itself

suffered an injury in fact, it will have standing to bring suit on behalf of its members when: (1)

its members would otherwise have standing to sue in their own right; (2) the interests it seeks to

protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief

requested requires the participation in the lawsuit of each of the individual members.  Hunt v.

Washington State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977); 539 Absecon Blvd., 2006

WL 1804578 at *5.  Associations bringing claims on behalf of its members are limited to relief

that, "if granted, will inure to the benefit of those members of the association actually injured."

Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399,  406 (3d Cir. 2005).

    In determining whether the first prong of this test is met, courts analyze whether

individual members, on whose behalf the suit is brought, would themselves have satisfied Article

III standing requirements had they sued individually.  539 Absecon Blvd., 2006 WL 1804578 at

*5.  In the instant matter, Kramer has not yet established that she has standing to bring this claim;

therefore, Disabled Patriots has not met the first prong of the associational standing analysis

because it has failed to demonstrate that its members would have standing to sue in their own right.

Pursuant to the second prong of the test for associational standing, this Court considers whether the interests that Disabled Patriots seeks to protect are germane to its purpose. According to the Complaint, the alleged purpose of the organization is "to represent the interests of its member(s) by assuring places of public accommodation are accessible to and usable by individuals with disabilities." Compl. ¶ 3 (emphasis added). Thus, the present suit is germane to Disabled Patriots' basic principles and representative of its purpose and Disabled Patriots satisfies the second prong of the test for associational standing.

Finally, in determining whether an organization meets the third prong of the standing test, this Court considers whether the claim advanced by the association requires participation of individual members. "It is almost a bright-line rule 'that requests by an association for declaratory and injunctive relief do not require participation by individual association members'. . . but conversely 'damages claims usually require significant individual participation, which fatally undercuts a request for associational standing.'" Clark, 213 F.R.D. at 207 (quoting Pa. Psychiatric Soc'y v. Green Spring Health Services, Inc., 280 F.3d 278, 284 (3d Cir. 2002)). In the instant matter, Plaintiffs request that this Court "issue a permanent injunction enjoining the defendants from continuing its discriminatory practices, ordering the Defendant to alter and modify the subject premises, facilities, services, activities, programs, accommodation and building as appropriate to comply with the ADA, closing the subject premises, facilities and building and discontinuing all non-complying services, activities, programs and accommodations until the requisite modifications are completed, awarding plaintiffs damages, and awarding

14

Plaintiffs their attorneys' fees, costs and litigation expenses incurred." Compl. at 10. Thus, Disabled Patriots' request for monetary damages undermines its ability to assert associational standing. If Disabled Patriots prevailed on the merits of its claim, this Court would need to make an individualized assessment by Plaintiffs' members to determine the measure of monetary damages suffered. Therefore, to assert associational standing, Disabled Patriots must submit an amended complaint to demonstrate that its members have standing to sue in their own right and that neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of the individual members.

## IV. Conclusion

For the foregoing reasons, the Court will give Plaintiffs 10 days to file an amended complaint alleging facts relating to their standing as well as submit an affidavit from Kramer, consistent with this Opinion. Defendant may seek discovery limited to the information set forth in Kramer's affidavit or re-file its motion within 30 days. Defendant's Motion to Dismiss is denied without prejudice.

Dated September 24, 2008                    /s/ Freda L. Wolfson
                                            Honorable Freda L. Wolfson
                                            United States District Judge